IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIHAAD HARRISON | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-3500 |
| | : | |
| MS. WOODARD, MS. STICKNEY | : | |
| | : | |

# MEMORANDUM

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**January 9, 2026**

　　　　Incarcerated persons claiming mental health professionals working in their custodial facilities violated their constitutional rights may sue those health professionals by pleading facts showing the constitutional harm. But Congress requires the incarcerated person administratively exhaust their claims through the custodial facility's published procedures before filing suit. The Pennsylvania Department of Corrections publishes and enforces a process to carefully review grievances from incarcerated persons. We today address an incarcerated person's claim of harm arising from mental health professionals' treatment in May 2025 violated their constitutional rights. The incarcerated person did not plead how they presented their claim to the facility. The mental health professionals move to dismiss arguing the incarcerated person did not meet Congress's mandate by exhausting their administrative remedies inside the Facility but instead shortcut the process. We studied the pleaded pro se allegations and records. We agree the incarcerated person has not shown administrative exhaustion on the four grievances leading to their claims before us. We grant the mental health professionals' motion to dismiss without prejudice to timely amend their allegations to plead how they administratively exhausted.

I. **Alleged pro se facts**

Jihaad Harrison entered SCI Phoenix on April 10, 2025 to serve part of their state sentence for violent crime convictions.[1] Mx. Harrison attempted suicide on April 27, 2025 and received treatment at Jefferson University Hospital.[2] They returned to SCI Phoenix on an unpleaded date. Mx. Harrison filed four grievances involving SCI Phoenix Mental Health Professionals Briana Woodard and Christine Stickney between May 7 and May 22, 2025.[3] The Mental Health Professionals claim Mx. Harrison did not exhaust internal administrative remedies through these four grievances. We evaluate each of those grievances in turn.

*May 7, 2025 Grievance No. 1146022.*

Mx. Harrison submitted Grievance No. 1146022 on May 7, 2025 concerning an interaction with Mental Health Professional Woodard earlier in the day.[4] Mental Health Professional Woodard walked past Mx. Harrison's cell and Mx. Harrison asked to speak to her "due to not getting along with" Mental Health Professional Stickney.[5] They also asked Mental Health Professional Woodard to file an abuse complaint.[6] Mental Health Professional Woodard "denied [Mx. Harrison]" and "left [them] in distress."[7] Mental Health Professional Woodard retaliated against Mx. Harrison for "filing paperwork on psych dept" and violated Department of Corrections' policies by refusing help.[8] Mx. Harrison wrote "abuse complaint" at the top of the grievance form and staff "denied [Mx. Harrison] access to [the Department of Corrections' Inmate Abuse] policy and forwarding [the] grievance to security."[9]

*May 12, 2025 Grievance No. 1146246.*

Mx. Harrison submitted Grievance No. 1146246 five days later on May 12, 2025 complaining about both Mental Health Professional Woodard and Mental Health Professional Stickney.[10] They claimed Mental Health Professional Woodard denied Mx. Harrison medical treatment on May 7, May 8, and May 9, 2025 and when Mx. Harrison banged on their cell door

for treatment, Mental Health Professional Woodard yelled, "[k]eep calling and Ima [sic] write you up."[11] Psychologist Woodard causes Mx. Harrison "extreme trauma and suicidal thoughts" and "leaves [them] in distress and targets [them]."[12] Mx. Harrison spoke with Mental Health Professional Stickney on May 9, 2025 about Mental Health Professional Woodard's conduct and Mental Health Professional Stickney stated, "I don't [know] why she won't help you but I told her to speak to you."[13] Mx. Harrison wrote "abuse allegation not grievance" at the top of the grievance form and staff "denied [Mx. Harrison] access to [the Department of Corrections' Inmate Abuse] policy and forwarding [the] grievance to security."[14]

### *May 19, 2025 Grievance No. 1147398.*

Mx. Harrison submitted Grievance No. 1147398 seven days later on May 19, 2025 accusing Mental Health Professional Woodard of "refusing [them] treatment and dressing sexually."[15] Mental Health Professional Woodard "conducted a round by herself and didn't walk by [Mx. Harrison's] door" and "came around with a grey sundress that was cut open in the back exposing her body" earlier in the day.[16] Mental Health Professional Woodard "ma[de Mx. Harrison] want to rape her brutal[l]y."[17] Mx. Harrison wrote "abuse complaint" at the top of the grievance form and staff "completely rejected grievance for review and left [Mx. Harrison] in distress and with no rehabilitation."[18]

### *May 22, 2025 Grievance No. 1148141.*

Mx. Harrison filed Grievance No. 1148141 three days later on May 22, 2025 complaining Mental Health Professional Woodard again denied them treatment.[19] Mental Health Professional Woodard "conducted psych rounds by herself" on May 19, May 21, and May 22, 2025 and "denied [Mx. Harrison] all treatment on camera (blatantly ignoring [them])."[20] Mx. Harrison wrote "abuse"

3

at the top of the grievance form and staff "denied [Mx. Harrison] access to [the Department of Corrections' Inmate Abuse] policy and forwarding to security."[21]

### *Mx. Harrison sues SCI Phoenix and state actors on July 7, 2025.*

Mx. Harrison sued SCI Phoenix and various facility officials and health care providers on July 7, 2025 asserting civil rights claims for deliberate indifference to their healthcare needs under the Eighth Amendment and due process violations under the Fourteenth Amendment.[22] We granted Mx. Harrison leave to proceed without paying the filing fees but requiring we meet Congress's mandate of screening their allegations under section 1915A.[23] We studied their allegations requiring we dismiss the due process claim as a matter of law.[24] We dismissed all claims against SCI Phoenix with prejudice because SCI Phoenix is not a "person" amenable to suit under section 1983.[25] We dismissed without prejudice the claims against all individual state actors except Mental Health Professionals Woodard and Stickney.[26]

## II. Analysis

Mental Health Professionals Woodard and Stickney move to dismiss arguing Mx. Harrison failed to exhaust their administrative remedies as to the four grievances as required by Congress in the Prison Litigation Reform Act.[27] Mx. Harrison opposes Mental Health Professionals Woodard and Stickney's Motion only with respect to two grievances.[28]

Congress through the Prison Litigation Reform Act requires incarcerated persons to properly and completely exhaust administrative remedies before challenging their confinement conditions in federal court.[29] We evaluate Mx. Harrison's compliance with the Department of Corrections' administrative regulations governing inmate grievances to determine whether they properly exhausted his claims.[30]

What constitutes "proper" exhaustion depends entirely on the facility's established grievance policies.[31] Our Court of Appeals instructs incarcerated persons need only exhaust the

4

grievance procedures "available" to them; failure to exhaust is excused where grievance procedures, though "officially on the books," are in reality "not capable of use to obtain relief."[32] "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the [incarcerated ]plaintiff."[33] Our Court of Appeals further instructs "[a] plaintiff's failure to exhaust his administrative remedies is an affirmative defense that, in an appropriate case, may be raised in a motion to dismiss."[34] "When a defendant files such a motion and 'the exhaustion issue turns on indisputably authentic documents related to the [incarcerated plaintiff's] grievances, a court may consider those documents without converting a motion to dismiss to a motion for summary judgment.'"[35]

The Commonwealth's Department of Corrections implemented an Inmate Grievance System Policy at DC-ADM 804 defining the procedures necessary to challenge conditions of confinement.[36] The Commonwealth through ADM 804 creates a three-step process: (1) an incarcerated person must first submit a grievance to the Facility Grievance Coordinator who reviews the grievance to determine whether it is properly submitted in accordance with the policy and, if properly submitted, is reviewed by a Grievance Officer who must respond to the grievance; (2) an incarcerated person may appeal the initial review to the Facility Manager who reviews the appeal and provides a reason for the decision; and (3) an incarcerated person may appeal the Facility Manager's decision to the Secretary of Corrections' Office of Inmate Grievances and Appeals.[37] The Commonwealth's ADM 804 is the *exclusive* means of exhaustion under the Act.[38]

An incarcerated person submits a grievance by placing a completed form in a designated lock box.[39] The Facility Grievance Coordinator retrieves the grievance from the lock box and assigns a tracking number and returns a copy of the grievance acknowledging receipt to the incarcerated person if the grievance complies with the procedures manual.[40] The staff member

assigned to review the grievance has fifteen working days to issue an initial response.[41] The incarcerated person has fifteen working days after receiving the initial response to appeal to the Facility Manager by placing the required papers in a designated lock box.[42] The Facility Manager has fifteen working days to issue a response after receiving the appeal; the incarcerated person then has fifteen working days to appeal the Facility Manager's response to the Chief Grievance Officer; the Chief Grievance Officer must then respond within thirty working days after receiving the appeal.[43] The incarcerated person can request an extension of the filing deadline and prison officials can extend their response deadline by ten working days at all three stages of the process.[44]

The Commonwealth's Department of Corrections Inmate Abuse Policy at DC-ADM 001 provides an incarcerated person "who is a victim of abuse" an alternative means to report the abuse.[45] The Commonwealth through ADM 001 permits an incarcerated person to report the abuse "verbally or in writing to a staff member, complain directly to [Department of Corrections'] Central Office, *or* file a formal grievance pursuant to ADM 804."[46] A staff member "who receives written or verbal notification from an inmate . . . alleging an incident of abuse . . . is required to complete a[n] . . . Employee Report of Incident for distribution to his/her supervisor and the facility's Security Office."[47] "ADM 001 provides a procedure by which [incarcerated persons] can report abuse, but it does not require a formal grievance to initiate an investigation, nor does it require that the alleged abuse violate an [incarcerated person]'s legal rights to warrant relief, both of which are required for an [incarcerated person] to obtain meaningful relief in federal court."[48] While ADM 001 and ADM 804 work "'in tandem,' they are not 'interchangeable,' and a[n incarcerated person] must fully comply with the administrative review process under ADM 804 to satisfy the exhaustion requirement."[49]

We studied the competing briefs. The Mental Health Professionals submitted the grievance packages for Grievances Nos. 1146022, 1147398, 1147398, and 1148141 in support of their exhaustion argument.[50] Mx. Harrison counters they attempted to send the Initial Review Responses to Grievance Nos. 1146022 and 1148141 to "PA/DOC Chief Grievance Office" and on June 20, 2025 received a "Returned Mail Notice" indicating "[i]nsufficient funds available to satisfy Postage/Cash Slip request."[51] Mx. Harrison argues they were on the "indigent list" and "given $10 a month and SCI Phoenix still denied [them] access to exhaust [their] grievances remedies" and SCI Phoenix "stopped [their] mail illegally."[52]

### A. DC-ADM 804 governs Mx. Harrison's exhaustion obligation.

Mx. Harrison claims they labelled each grievance "abuse" and staff denied them redress under ADM 001 by failing to forward the grievances to the Security Office. But the Department of Corrections through ADM 001 defines "abuse" narrowly and expressly excludes from its scope "conditions of confinement; claims of inadequate medical or intentionally denied medical care; [and] harassment or nonperformance of duty by a staff member."[53] Mx. Harrison's grievances against Mental Health Professionals Woodard and Stickney describe at most the denial of medical treatment, verbal threats of disciplinary action, and dissatisfaction with staff conduct. Those allegations fall squarely within conduct the Department of Corrections through ADM 001 excludes from its definition of abuse. ADM 001 therefore did not apply to Mx. Harrison's grievances and SCI Phoenix properly processed this grievance through the inmate grievance system governed by ADM 804. The Department of Corrections required Mx. Harrison to properly exhaust their claims under ADM 804.

7

### B. We dismiss Mx. Harrison's presently abandoned claim arising from May 12, 2025 Grievance No. 1146246 and May 19, 2022 Grievance No. 1147398 as waived.

Mx. Harrison seeks redress under an Eighth Amendment deliberate indifference claim based on Grievance Nos. 1146246 and 114739 but does not address Mental Health Professionals Woodard and Stickney's exhaustion arguments as to those two grievances. "A plaintiff's failure to substantively address a defendant's arguments for dismissal as an abandonment of those claims, begetting dismissal of the claim."[54] Mx. Harrison waived opposition to dismissal of the deliberate indifference claim arising from Grievance Nos. 1146246 and 1147398 by not substantively responding to Mental Health Professionals Woodard and Stickney's arguments. We dismiss their claim based on Grievance Nos. 1146246 and 1147398 without prejudice if they can plead exhaustion of these two grievances.

### C. We dismiss Mx. Harrison's claim arising from May 7, 2025 Grievance No. 1146022 and May 22, 2025 Grievance No. 1148141.

Mx. Harrison also asserts an Eighth Amendment deliberate indifference claim based on Grievance Nos. 1146022 and 1148141. The grievance packets attached to Mental Health Professionals Woodard and Stickney's Motion show the Facility Grievance Coordinator received both grievances and the Grievance Officer issued an Initial Review Response to each.[55]

Mx. Harrison contends they attempted to mail the Initial Review Responses to the Chief Grievance Office and relies on a June 20, 2025 returned mail notice. But they never address the required second step of the ADM 804 process. Mx. Harrison must first appeal the Initial Review Response to the Facility Manager before they may appeal to the Chief Grievance Officer. An appeal to the Facility Manager requires only placing the appeal in a designated lock box. It does not involve mail or postage. We also note Mx. Harrison pleaded in their Complaint they received a "returned mail notice stating [they] ha[d] insufficient funds available to satisfy postage/cash slip

request" on June 20, 2025 after "appealing Grievance No. 1145725 to final appeal level to satisfy exhaustion of legal remedies."[56]

Mx. Harrison does not plead facts showing they appealed the Initial Review Responses for Grievance Nos. 1146022 or 1148141 to the Facility Manager. They did not complete the second step of the DC-ADM 804 process based on their current allegations. Mx. Harrison therefore did not properly exhaust administrative remedies as to Grievance Nos. 1146022 or 1148141.

We dismiss Mx. Harrison's deliberate indifference claims arising from Grievance Nos. 1146022 and 1148141.

### III. Conclusion

Mx. Harrison does not plead facts allowing us to plausibly infer they administratively exhausted their constitutional claims under the four grievances before us. We grant the Defendants' motion to dismiss without prejudice to Ms. Harrison timely amending, if they can, to plead facts showing they properly exhausted as to their four grievances.

---

[1] ECF 1 ¶¶ 16–17. We dismissed Mx. Harrison's claims against SCI Phoenix and state actors J. Terra, Dr. Akilah Lamar, B. Huner, K. Owens, Lt. N. Matthews, Lt. Betton, Lt. McCafferty, C.O. Fital, and C.O. Marquita Barefield. *See* ECF 8 ¶¶ 5–6. Mx. Harrison did not amend their Complaint stating a claim for relief against these parties. We study Mx. Harrison's fact assertions as they relate to remaining Defendants Mental Health Professionals Woodard and Stickney.

[2] ECF 1 ¶ 18.

[3] *Id.* ¶¶ 23–24, 27–29, 35–36, 38–39.

[4] *Id.* ¶¶ 23–24. It appears Mx. Harrison misidentified Grievance No. 1146022 as Grievance No. 1146002. Both parties attach Grievance No. 1146022 as exhibits to their dismissal filings. *See* ECFs 14-2, 22.

[5] ECF 1 ¶ 23.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 24.

[10] *Id.* ¶¶ 27–29.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 29.

[13] *Id.* ¶ 28.

[14] *Id.* ¶ 29.

[15] *Id.* ¶¶ 35–36.

[16] *Id.* ¶ 35.

[17] *Id.* ¶ 36.

[18] *Id.*

[19] *Id.* ¶¶ 38–39.

[20] *Id.* ¶ 38.

[21] *Id.* ¶ 39.

[22] *See generally* ECF 1. They sued: J. Terra, Superintendent of SCI Phoenix; Dr. Akilah Lamar, Director of Psychology at SCI Phoenix, B. Huner, Corrections Health Care Associate at SCI Phoenix; K. Owens, Grievance Coordinator at SCI Phoenix; Ms. Woodard, Psychologist at SCI Phoenix; Ms. Stickney, Psychologist at SCI Phoenix; N. Matthews, Lieutenant at SCI Phoenix; Betton, Lieutenant at SCI Phoenix; McCafferty, Lieutenant at SCI Phoenix; Fital, Correctional Officer at SCI Phoenix; Marquita Barefield, Correctional Officer at SCI Phoenix; and SCI Phoenix. *Id.*

[23] *See generally* ECF 8.

[24] *Id.* at 7.

[25] *Id.* at 2.

[26] *Id.*

[27] ECF 14.

[28] ECF 22.

---

[29] *See* 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding "the [Prison Litigation Reform Act] exhaustion requirement requires proper exhaustion").

[30] *Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023).

[31] *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion.").

[32] *Rinaldi v. United States*, 904 F.3d 257, 266–67 (3d Cir. 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 633 (2016)).

[33] *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013) (first citing *Jones*, 549 U.S. at 212, 216–17 (2007); then citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

[34] *Talley v. Constanzo*, No. 19-2650, 2022 WL 17352167, at *2 (3d Cir. Dec. 1, 2022) (citing *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002)).

[35] *Id.* (cleaned up).

[36] *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305-06 (3d Cir. 2020).

[37] *Prater*, 76 F.4th at 203–04.

[38] *Id.* at 204.

[39] *Williams v. Stickney*, No. 22-214, 2025 WL 2200911, at *6 (E.D. Pa. July 31, 2025) (citing ADM 804 §§ 1(A)(5), 1(B)(1)–(2)).

[40] *Id.* (citing ADM 804 §§ 1(C)(1), (3)). The Facility Grievance Coordinator also enters the grievance into the Automated Inmate Grievance Tracking System. The Tracking System "is an electronic database used by the Department of Corrections to track inmate grievances. . . . Facility Grievance Coordinators, officers investigating grievances, Facility Managers, and staff from the Secretary's Office of Inmate Grievances & Appeals (SOIGA) can enter information into AIGTS in accordance with their roles in reviewing grievances, and other staff members can view that information." *Id.* at *6 n.10.

[41] *Id.* at *6 (citing ADM 804 § 1(C)(5)(g)).

[42] *Id.* at *7 (citing ADM 804 § 2(A)(1)).

[43] *Id.* (citing ADM 804 §§ 2(A)(2), 2(B)(1)(b), 2(B)(2)(a)(1)).

[44] *Id.* (citing ADM 804 §§ 1(C)(2), 1(C)(6)(e), 2(A)(2)(c), 2(A)(2)(d)(4), 2(B)(1)(c), 2(B)(2)(a)(3)).

[45] *See generally* ADM 001; *see also Prater*, 76 F.4th at 204.

---

[46] *Prater*, 76 F.4th at 204 (emphasis in original).

[47] ADM 001 § IV(C).

[48] *Everett v. Robinson*, No. 22-2890, 2023 WL 6458850, at *2 (3d Cir. Oct. 4, 2023) (citing *Prater*, 76 F.4th at 204).

[49] *Id.*

[50] ECFs 14-2, 14-3, 14-4, 14-5. Mx. Harrison did not allege the grievance packages on which they base their claims are inauthentic or incomplete. *See* ECF 22. Mx. Harrison also submitted Grievances Nos. 1146022 and 1148141 in support of their Opposition. *Id.* at 5–6. We may consider the grievance packages included in Mental Health Professionals Woodard and Stickney's Motion to dismiss without converting the Motion to one for summary judgment. *See, e.g.*, *Rice v. Kernizan*, No. 24–1501, 2025 WL 242834, at *4 n.5 (E.D. Pa. Jan. 17, 2025) (citing *Freedland v. Fanelli*, No. 18-2250, 2019 WL 2448810, at *2 (E.D. Pa. June 10, 2019), *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)); see also *Stanley v. Little*, No. 23-4571, 2024 WL 3678987, at *5 n.6 (E.D. Pa. Aug. 6, 2024) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018)).

Mental Health Professionals Woodard and Stickney also submitted the Declaration of Kristina Owens, the Facility Grievance Coordinator at SCI Phoenix and a spreadsheet of Mx. Harrison's "grievance history" in support of the Motion. *See* ECFs 14-1, 14-6. We do not consider them at this stage because Mx. Harrison disputes the authenticity of both documents. ECF 22 at 3.

[51] ECF 22 at 2, 7. Mental Health Professionals Woodard and Stickney do not dispute the authenticity of the notice so we may also consider it.

[52] *Id.* at 2. Mx. Harrison also argues a cash slip dated August 10, 2025 directing funds to be deducted for postage to "Chief, Secretary of Inmate Grievances [and] Appeals, DOC" undermines Grievance Coordinator Owens's Declaration and Mx. Harrison's grievance history, which reflects no filings to the Secretary after August 10, 2025. *Id.* at 3, 8. We need not address this argument because we do not consider Grievance Coordinator Owen's Declaration and Mx. Harrison's grievance history spreadsheet.

[53] ADM 001 at 17 (Glossary of Terms).

[54] *Arcuri v. Cnty. of Montgomery*, No. 20-5408, 2021 WL 1811576, at *10 (E.D. Pa. May 6, 2021) (collecting cases).

[55] ECFs 14-2, 14-5. Mx. Harrison also confirms receipt of those responses by asserting they attempted to send them to the Chief Grievance Office on June 20, 2025. ECF 22 at 2.

[56] ECF 1 ¶ 49.